IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACKIE S. FRENCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-479-R |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant Commissioner issued a final decision denying Jackie French's (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Judge David L. Russell referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the Court reverse and remand the Commissioner's decision.

I. **Administrative proceedings.**

In her application for benefits, Plaintiff alleged that her impairments became disabling in July 2007. AR 273-77. The Social Security

Administration (SSA) denied Plaintiff's claim, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 84-119. In her April 2010 decision, the ALJ found that Plaintiff was not disabled. *Id.* at 133. Plaintiff sought review with the SSA Appeals Council, *id.* at 211, filed a new application for benefits, and supplied additional evidence. *Id.* at 149. The Appeals Council then issued a finding that Plaintiff became disabled on April 23, 2010, and, based on several errors in the ALJ's decision, remanded the case for further review. *Id.* at 149-151. Specifically, the Appeals Council ordered the ALJ to consider whether Plaintiff had been disabled at any time from July 31, 2007, to April 22, 2010. *Id.* at 35, 149-51.

The ALJ conducted a second hearing in June 2012, *id.* at 31-83, and in September 2012 issued an opinion that Plaintiff was not under any disability from July 31, 2007, through April 22, 2010. *Id.* at 22. The Appeals Council declined Plaintiff's request for review, *id.* at 1-4, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-

step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ will conduct a residual functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 404.1545(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that she cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims.

Plaintiff presents multiple claims of error, and the undersigned agrees that the ALJ's decision is troubling on many levels.[3] Because, the

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a)(1).

[3] For example, the parties cannot even agree on whether the ALJ adopted or rejected the treating physician's RFC findings, or whether her notation that those RFC findings were consistent with her RFC assessment

3

undersigned ultimately recommends remand based on errors the ALJ made in considering whether Plaintiff's migraine headaches affected her ability to sustain work from July 31, 2007, through April 22, 2010, the undersigned will not address Plaintiff's remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

IV. **Analysis.**

A. **Standard for review.**

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010).

B. **The ALJ's relevant findings.**

In her second opinion, the ALJ found that from July 31, 2007, to April 22, 2010, Plaintiff had severe "neck and back condition, rheumatoid arthritis, asthma, narcolepsy and depression." AR 12. She then found that with these severe impairments, Plaintiff: (1) had the RFC to perform light exertional work with some exertional and non-exertional limitations, *id.* at 14, and (2)

---

amounted to typographical error. *Compare* Doc. 13, at 27-28 *with* Doc. 14, at 6 *and* Doc. 15, at 1-2; *see* AR 14, 17-18.

4

could perform other jobs existing in significant numbers in the national economy. *Id.* at 21-22.

### C. The ALJ's duty to consider the effect of all Plaintiff's impairments on her ability to sustain gainful employment.

The ALJ did not find that Plaintiff's migraine headaches were a severe impairment from July 31, 2007 to April 22, 2010. *Id.* at 12. Nevertheless, "in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. § 404.1545(a)(2)). Additionally, the hypothetical questions an ALJ poses to a vocational expert to assist with the step-five determination must reflect with precision "all . . . those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). This is particularly important because "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [she] can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job [she] finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (citation omitted).

5

The undersigned finds that because the ALJ performed only a perfunctory assessment of the relevant evidence, her reason for seemingly rejecting the effects of Plaintiff's migraine headaches cannot be upheld.

### 1. The medical evidence relating to Plaintiff's migraine headaches.

#### a. Treating physician examinations.

As a brief background, Plaintiff appeared in her physician's office in April 2007 with a migraine headache accompanied with "a 24-hour history of nausea, vomiting, photophobia and phonophobia."[4] AR 623. Her treating physician, Dr. Gerald Mills, noted Plaintiff's "long-standing history of severe headaches." *Id.* Plaintiff returned to her physician in early August 2007 complaining that her migraine symptoms had worsened, and Dr. Mills assessed "migraine . . . regression." *Id.* at 614. Later that same month, Plaintiff's physician treated her in his office for a headache which had lasted "four days despite using her Topamax compliantly." *Id.* at 611.

In October 2007, neurologist Dr. James Russell Couch evaluated Plaintiff. At that time, Plaintiff complained of once-a-week headaches "associated with nausea, photophobia, and phonophobia." *Id.* at 928. Dr.

---

[4] In a migraine headache, photophobia describes a "light-induced pain." *See* http://www.medilexicon.com/medicaldictionary.php?s=photalgia (last visited April 13, 2014). Phonophobia is defined as a sensitivity to noise. *See* http://www.medilexicon.com/medicaldictionary.php?t=68371 (last visited April 13, 2014).

Couch increased Plaintiff's Topamax dosage and asked Plaintiff to keep track of her migraine symptoms. *Id.* at 929. The next month, Dr. Carl Thompson examined Plaintiff at the SSA's request. *Id.* at 697. Plaintiff described headaches which progressed into migraines "every 2-3 weeks." *Id.* at 698. During the headaches, Plaintiff experienced "photophobia and phonophobia" with "nausea and vomiting." *Id.* Dr. Thompson diagnosed Plaintiff with "migraines." *Id.* at 699.

Plaintiff visited Dr. Couch again in January 2008. At that time, Plaintiff was experiencing at least one "disabling headache" "per week," in addition to other headaches which occurred "three to four times a week." *Id.* at 926. Plaintiff's secondary headaches would start as "10/10 in intensity" and then would become "dull headache[s]" that would last all day. *Id.* Dr. Couch again increased Plaintiff's Topamax dosage. *Id.* at 927. Despite the medication increase, Plaintiff suffered another severe migraine headache in March 2008 and was treated in Dr. Couch's office. *Id.* at 1163.

In April 2008, Plaintiff returned to Dr. Couch. He reviewed Plaintiff's "headache calendar" and noted that:

> [F]rom January 16, 2008, to February 15, 2008, [Plaintiff] had seven disabling, 10 severe, eight mild, and five days with no headache. The next month, she had four disabling, 11 severe, five mild, and five days with no headache. From March 16, 2008, to April 15, 2008, she had three disabling, seven severe, seven mild, and nine days with no headache; and in the last week from

7

> April 16, 2008, to April 22, 2008, she had three disabling, two severe, two mild, and one day with no headache.

*Id.* at 924. Dr. Couch opined that there had been "modest success" with an increased Topamax dosage but noted that Plaintiff was taking the maximum dosage allowed. *Id.* at 925. He also noted that Plaintiff had limited to no success with other drug treatments. *Id.*

In September 2008, Dr. John Houck, Jr. examined Plaintiff and noted that her headaches had been "especially severe over the past two to three months." *Id.* at 2109. Dr. Houck opined that sinus issues could be causing Plaintiff's migraines. *Id.*

Plaintiff sought treatment from a second neurologist in December 2008. Dr. Mark Fisher noted that Plaintiff suffered numerous weekly headaches, sometimes lasting "up to days." *Id.* at 1704. Dr. Fisher diagnosed Plaintiff with "intractable migraine headaches" and modified Plaintiff's prescriptions. *Id.* at 1705, 1707. In February 2009, Dr. Fisher noted that Plaintiff's headaches were "worse" in frequency, duration, and severity. *Id.* at 1702. Dr. Fisher made a similar assessment one month later when Plaintiff returned to his office after suffering two migraine headaches, and he admitted Plaintiff to the hospital for treatment. *Id.* at 1700, 1701.

In May 2009, Dr. Fisher examined Plaintiff and noted that she had experienced "3-4" headaches since being hospitalized, each "severe" and each

8

lasting "up to 2 days." *Id.* at 1698. Dr. Fisher modified Plaintiff's medication. *Id.* Dr. Fisher examined Plaintiff again in September 2009, noting that she continued to have frequent and severe headaches lasting for up to two days. *Id.* at 1696. The physician opined that Plaintiff's migraines were "not much better." *Id.* at 1697.

### b. Emergency room evidence.

The record reflects that in addition to the physician visits noted above, Plaintiff sought immediate relief for her migraine headaches at the emergency room on thirty-four occasions from August 3, 2007, to November 10, 2009. *Id.* at 1075-1083, 1086-98, 1109-10, 1124-25, 1140-41, 1156, 1228-29, 1245-47, 1275-76, 1288-90, 1304-06, 1336-37, 1349-51, 1359-60, 1375-76, 1388-89, 1403-04, 1419-21, 1446-48, 1460-61, 1506-08, 1536-38, 1550-51, 1561-62, 1574-75, 1606-07, 1621-23, 1637-39, 1765-67, 2229-33, 2237-41, 2244-47, 2259-61, 2264-66, 2268-69. During these visits, Plaintiff most often presented with a headache that had lasted more than one day. *Id.* at 1086-98, 1109-10, 1288-90, 1336-37, 1349-51, 1359-60, 1388-89, 1403-04, 1446-48, 1536-38, 1550-51, 1561-62, 1606-07, 1621-23, 1637-39, 1765-67, 2244-47, 2259-61, 2264-66. And, photophobia, vomiting, or nausea often accompanied Plaintiff's headaches. *Id.* at 1086-98, 1109-10, 1124-25, 1140-41, 1156, 1228-29, 1245-47, 1288-90, 1304-06, 1336-37, 1349-51, 1359-60, 1375-76, 1388-89, 1403-04, 1419-21, 1446-48, 1460-61, 1506-08, 1550-51, 1574-75, 1621-23,

1637-39, 1765-67, 2229-33, 2237-41, 2244-47, 2259-61, 2264-66. Plaintiff was often ordered to rest at home in a dark room. *Id.* at 1156, 1275-76, 1304-06, 1349-51, 1506-08, 1536-38, 1621-23, 2237-41, 2264-66.

### 2. The ALJ's errors.

The ALJ only briefly discussed Plaintiff's migraine headaches, finding that: (1) in July 2007 Plaintiff had presented with a "history of migraines for which she took medications," *id.* at 15; (2) Plaintiff complained of migraines in August and November 2007, *id.* at 15-16; (3) Plaintiff's migraines responded well to Topamax in October 2007, *id.* at 16; (4) Plaintiff was "only" suffering three to four headaches per week in January 2008, *id.*; and (5) Plaintiff left the hospital in May 2009 with numerous diagnoses, including migraine headaches. *Id.* at 17. Importantly, the ALJ did not acknowledge the sheer number of Plaintiff's migraines, their duration and severity, Plaintiff's persistent symptoms of nausea, vomiting, sensitivity to light and noise, her frequent need to rest in a dark room, or her repeated visits to the emergency room to obtain relief. The undersigned finds that the ALJ's skeletal discussion of the evidence constitutes legal error. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding that while an ALJ need not consider

10

every piece of evidence in the record, she must "discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects").

The ALJ then compounded that error when she seemingly rejected any effects of the impairment because: "most symptomotology abated prior to the end of the adjudicative period." AR 17. However, whether Plaintiff's symptoms had abated by April 2010 is irrelevant to whether her migraine headaches affected her ability to maintain a job *from July 2007 to November 2009* – the time in which the evidence establishes that Plaintiff suffered the most significant migraine headache symptoms. And, if the ALJ had other reasons to believe that Plaintiff's migraine headaches did not affect her ability to sustain employment from July 2007 through November 2009, she did not say so.[5]

Finally, the undersigned cannot find the ALJ's errors harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing harmless

---

[5] The Commissioner argues that a medical expert testified Plaintiff could perform work within the RFC parameters despite her migraine headaches. Doc. 14, at 10. But the ALJ did not rely on this testimony to reject the migraine headache limitations. And, more importantly, on cross-examination, the medical expert conceded that he could not say whether Plaintiff would have required the rest and breaks described in the medical records. AR 47-50, 51-52. The medical expert was also under the false impression that no neurologist had treated Plaintiff, *id.* at 50-51, when the evidence above demonstrates that two different neurologists treated Plaintiff. *See id.* at 924-38, 2332-42.

error in social security cases and holding that such a principle applies only where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). As discussed above, the relevant question is not whether Plaintiff could have physically performed work, but whether she could have *maintained* a job with her migraine headaches. *See Washington*, 37 F.3d at 1442. As it stands, the evidence would seem to suggest that from July 2007 to November 2009, Plaintiff suffered one or more weekly migraines accompanied with nausea, vomiting, and light and noise sensitivity. And, with these migraines, Plaintiff often required emergency room treatment and rest in a dark room. The vocational expert also testified that a claimant "absent from work on a sustained basis more than twice a month," requiring unscheduled breaks, or needing to "lie down during the day" at a time other than a scheduled break *could not sustain* employment. AR 80-81. So, a reasonable factfinder could find that Plaintiff's migraine headache symptoms prevented her from being able to *sustain* full time work, at least from July 2007 to November 2009.

In sum, the undersigned finds that the ALJ did not properly consider the medical evidence and did not give a legitimate reason for seemingly rejecting the effects of Plaintiff's migraine headaches. Accordingly, the

12

undersigned recommends that the Court reverse and remand the Commissioner's decision.

## V. Recommendation and notice of right to object

For the reasons discussed above, the undersigned recommends that the Court reverse and remand the Commissioner's decision.

The parties are advised of their right to object to this report and recommendation by the 5th day of May, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 15th day of April, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE